# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| VISION REAL ESTATE INVESTMENT CORP., AUTUMN ASSISTED LIVING PARTNERS, INC., and MICHAEL HAMPTON | ) ) ) ) | NO. 3:18-cv-00014 |
| Plaintiffs, | ) ) ) | JUDGE CAMPBELL |
| v. | ) ) | MAGISTRATE JUDGE NEWBERN |
| METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY, et al., | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is a Motion for Judgment on the Pleadings filed by Defendant Metropolitan Government of Nashville and Davidson County ("Metro"). (Doc. No. 99). Plaintiffs filed a Response (Doc. No. 119) and Metro filed a Reply (Doc. No. 122). Together with the Response, Plaintiffs moved to Court to delay ruling on Defendant's Motion and to allow limited discovery to obtain evidence in support of their equal protection claim. (Doc. No. 120). Metro filed a response in opposition to the motion for discovery. (Doc. No. 123).

For the reasons stated below, Plaintiffs' motion to conduct discovery is **DENIED** and Metro's Motion for Judgment on the Pleadings is **GRANTED**.

## I.      BACKGROUND

Plaintiffs Vision Real Estate Investment Corporation ("Vision") and Autumn Assisted Living Partners, Inc. ("Autumn") are Tennessee corporations owned by Plaintiff Michael Hampton. (Doc. No. 45, ¶¶ 1-2). Hampton formed the companies in anticipation of purchasing

and developing a parcel of land in north Nashville known as the "Bordeaux Hospital Property" from Metro Nashville. (*Id*. at ¶ 12).

The Court set forth a thorough description of the facts of this case in its September 30, 2019 Memorandum (Doc. No. 95), which are incorporated herein. For clarity and ease of reference, the Court provides an abbreviated summary of the allegations relevant to the claims against Metro.

On January 10, 2014, Plaintiffs Vision and Autumn entered into three separate agreements with Metro relating to the Bordeaux Hospital Property. Two of these agreements related to the operation and sale of a Metro-owned assisted living facility on the property. (Doc. Nos. 45-1 and 45-2). In what is referred to as the "Lease Purchase Agreement," Autumn agreed to operate the facility, make $300,000 in capital improvements during the first 18 months of the lease, and purchase the facility for $500,000 no later than July 1, 2016. (Doc. No. 45-2).

To help offset the operating losses related to operation of the facility[1], Metro agreed to sell two tracts of land in the Bordeaux Hospital Property to Vision. (Doc. No. 45 at ¶¶ 14, 15). In what will be referred to as the Second Contract,[2] Vision made a non-refundable earnest money deposit and Metro incurred an obligation "to support Vision's application to rezone the subject Property to allow construction of project specified in the Bordeaux Hills Redevelopment District." (Doc. No. 45-3). The contract included the following conditions precedent to the sale of Tract One: (1) Autumn must complete the capital improvements to the Facility as required by the Lease Purchase

---

[1]     The Assisted Living Facility was losing more than $2,000,000 per year prior to Autumn taking over the operation of the facility. (Doc. No. 45, ¶ 15).

[2]     Metro and Vision entered into two contracts regarding the sale and development of the Bordeaux Hospital Property. The first agreement, which was contemporaneous with the agreements between Autumn and Metro regarding the assisted living facility, was contingent on legislation which was never enacted. (Doc. No. 45, ¶ 15). After the legislation failed, the parties negotiated a second agreement for two smaller tracts of land. (Doc. No. 45-3). Only the second contract is relevant to the claims asserted.

Agreement; and (2) Autumn must have completed the purchase of the Facility and be operating the Facility as "an assisted living facility fully licensed by the State of Tennessee." (*Id*.). The sale of Tract Two was conditioned upon the completion of the sale of Tract One and the construction of at least 32 affordable, senior housing units on Tract One. (*Id*.).

In February 2016, Autumn (through a to-be-formed affiliate) applied to the Metropolitan Development and Housing Agency ("MDHA") for Tax Increment Financing ("TIF") to purchase the assisted living facility. (*Id*. at ¶¶ 36, 38, 69). Although review of the application was expected to take four to six weeks, MDHA rejected the application three days after it was complete, telling Autumn that the "existing currently operated assisted living facility is not considered a redevelopment eligible for tax increment financing dollars as anticipated in the Bordeaux redevelopment plan." (*Id*. at ¶ 96). Autumn was later approved for tax-exempt bond financing, but the bond measure was never signed by the mayor. (*Id*. at ¶¶ 54-61). Plaintiffs claim they were discriminated against on the basis on race in consideration of the TIF application. They allege Metro and MDHA do not approve TIF funds to African-American owned businesses or to be used for development in the historic African-American neighborhoods of north Nashville / Bordeaux. (*Id*. at ¶¶ 92-98).

In December 2017, after a series of renegotiations and delays, the sale contemplated in the Second Contract remained incomplete and the Metro Council was considering a bill to rescind the Lease Purchase Agreement and repeal the 2015 ordinance approving the Second Contract. (*Id*. at ¶ 46, 102). On January 6, 2017, while the bill was pending before the Metro Council, Autumn delivered funds for the agreed purchase price to Metro and requested to close on the facility on January 10, 2017. (*Id*. at ¶¶ 51, 111). A few hours later, Metro terminated the Lease Purchase Agreement on grounds that Autumn had not completed the purchase of the facility by the specified

3

date and raising concerns about Facility operations. (Doc. No. 45-4). Shortly thereafter, the Metro Council passed the bill rescinding the Lease Purchase Agreement and the Second Contract. (Doc. No. 45 at ¶ 53). Plaintiffs allege they were not given adequate notice or opportunity to be heard on the bill.

Thereafter, Metro transferred a portion of the Bordeaux Hospital Property to MDHA. MDHA successfully rezoned the property and planned a $9.5 million development using federal funding. (*Id*. at ¶¶ 70, 72). Plaintiffs allege Metro never intended to complete the sale to Vision because MDHA needed to develop the property itself to avoid forfeiting $10 million in federal disaster relief. (*Id*. at ¶¶ 81-82).

The operative Second Amended Complaint (Doc. No. 45) asserts claims against Metropolitan Government of Nashville and Davidson County, the Metropolitan Development and Housing Agency, and against former Metro City Councilmembers Jim Shulman and Dominick Leonardo. The Complaint alleges constitutional claims for violation of procedural and substantive due process and of the Equal Protection Clause and state law claims for breach of contract, inducement to breach of contract, intentional interference with business relationship, civil conspiracy, equitable estoppel, and fraudulent inducement. (*Id*.)

All of the Defendants except Metro filed motions to dismiss (Doc. Nos. 68 and 72). Upon consideration of those motions, the Court dismissed all claims against Defendants Jim Shulman and Dominick Leonardo and dismissed the constitutional claims against MDHA. (Doc. No. 95). MDHA argued that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss those claims as well, but because all of the claims against Metro remained, the Court did not dismiss the state law claims against MDHA at that time. (*Id*.).

4

Shortly after the Court issued a ruling on the motions to dismiss, Metro filed the instant Motion for Judgment on the Pleadings seeking judgment on all claims.

## II.    STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The standard for evaluating a motion for judgment on the pleadings is the same as that applicable to a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir. 2014). "In reviewing a motion for judgment on the pleadings, we construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Id*. (internal quotation marks and citations omitted).  "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claims plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbol*, 556 U.S. 662, 677 (2009)).

In ruling on a motion under Rule 12(c), the Court may look only at the "pleadings." *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 887 (M.D. Tenn. 2018).  The term "pleadings" includes both the complaint and the answer, Fed. R. Civ. P. 7(a), and "[a] copy of any written instrument which is an exhibit to a pleading and is a part thereof for all purposes."  Fed. R. Civ. P. 10(c).  "[M]atters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account." *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc*., 108 F.3d 1546, 1554 (6th Cir. 1997)).

5

# III. ANALYSIS

## A. Motion to Delay Ruling and for Limited Discovery

Plaintiffs' have moved for the Court to delay ruling on Defendant's Motion for Judgment on the Pleadings and permit limited discovery on their equal protection claim. (Doc. No. 120). The Court finds no cause to delay ruling on Defendant's motion. Moreover, discovery in this case has proceeded according to the case management schedule set by the Magistrate Judge, thereby obviating a need to allow "limited discovery" on the equal protection claim. Plaintiffs have had ample time and opportunity to discover facts in support of their equal protection claims – the TIF application that is the subject of the equal protection claim was denied more than four years ago and because Metro and MDHA are public entities, the information sought was attainable outside the confines of this litigation. Accordingly, the motion to delay ruling and to allow limited discovery is DENIED.

## B. Procedural Due Process

Plaintiffs bring a claim for violation of their right to procedural due process guaranteed by the Fourteenth Amendment under 42 U.S.C. § 1983. Plaintiffs allege Defendants violated their right to procedural due process on four occasions: (1) termination of the contract; (2) application for a change of zoning; and (3) application for TIF funds. (Doc. No. 45 at ¶¶ 34, 38, 46, 56, 95-96, 125). In addition, Plaintiffs claim deprivation of their "constitutional right to earn a living through the development of the contract property, the operation of the Assisted Living Facility, and other activities that would have resulted in income and profits to the Plaintiffs." (*Id*. at ¶ 129).

The Court has previously held that Plaintiffs do not have a property interest in the zoning change or in tax increment financing and that Plaintiffs' due process claims related to these issues are not viable. (*See* Doc. No. 95 at 17-19). The Court also held that Plaintiffs' have not stated a

due process claim based on deprivation of liberty interest. (*Id.*) Plaintiffs' due process claims with regard to these allegations against Metro fail for the same reasons.

With regard to the termination of the contracts, however, the Court dismissed the claim against MDHA because Plaintiff did not allege facts to show that MDHA was responsible for the alleged denial of due process related to the termination of the contract. (Doc. No. 95 at 16). The Court noted that "[i]f any due process was required with regard to the termination of the contracts, MDHA was not the party to provide such process." (*Id.*) Accordingly, the question of whether Metro's termination of the contract gives rise to a procedural due process claim remains unresolved and the Court considers it now.

The Fourteenth Amendment forbids a state from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. The fundamental requirement of due process is notice and the opportunity to be heard at a meaningful time and in a meaningful manner. *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). To establish a procedural due process claim, a plaintiff must establish a constitutionally protected liberty or property interest and show that such an interest was deprived without appropriate process. *Midkiff v. Adams Cty. Reg. Water Dist.*, 409 F.3d 758, 762 (6th Cir. 2005) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972)).

Defendant Metro disputes that Plaintiffs had a protected property interest and argues that even if there is a protected interest, Plaintiffs' claim nevertheless fails because adequate state law remedies exist to redress the alleged wrongful termination of the contract. (Doc. No. 100 at 6).

Not every deprivation of a constitutionally protected property interest is actionable in a procedural due process suit. *See Machisa v. Columbua City Bd. of Ed.*, 563 F. App'x 458, 462 (6th Cir. 2014). That is the case here, where Plaintiffs have an adequate remedy for the alleged

7

wrongful termination of the Second Contract through a state breach of contract action. Indeed, Courts have regularly rejected attempts to convert a breach of contract claim into a constitutional due process claim, particularly when the "only basis for federal jurisdiction is that a state actor is one of the contracting parties." *Ramsey v. Bd. of Ed. of Whitley Cty.*, 844 F.2d 1268, 1273 (6th Cir. 1988). The *Ramsey* court held that "when the deprivation is a simple breach of contract and there is an adequate state breach of contract action available as a remedy," a Section 1983 action is not available. *Id.*

Under facts similar to those presented here, the Sixth Circuit held that a city's termination of a real estate purchase agreement without a hearing did not state a claim for violation of procedural due process because a breach of contract action would provide an adequate procedural protection for the city's termination of the agreement. *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 830-32 (6th Cir. 2009) ("It is neither workable or it is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim."); *see also*, *Machisa*, 563 F. App'x at 463 (plaintiff's alleged property interest in the contract not remediable in federal court because there was an adequate state breach of contract action available as a remedy).

Plaintiffs argue that a breach of contract action is insufficient to provide a remedy because "the deprivation constitutes a denial of a present entitlement." (Doc. No. 119 at 17). In support of the argument, Plaintiffs cite *Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001). In *Lujan*, the Supreme Court held that denial of payment due under a contract did not give rise to a due process claim because the plaintiff could vindicate his rights in an ordinary breach of contract suit. The *Lujan* Court suggested, however, that in some cases a plaintiff may have a constitutional claim when he is "denied a right by virtue of which he was presently entitled either to exercise

8

ownership dominion over real or personal property, or to pursue a gainful occupation." *Id.* The Court listed examples of cases involving a "present entitlement": *Barry v. Barchi*, 443 U.S. 55 (1979) (racetrack trainer suspended from employment); *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993) (forfeiture of a homeowner's house); *FDIC v. Mallen*, 486 U.S. 230 (1988) (bank president suspended from employment); *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337 (1969) (wage garnishment).

Plaintiffs contingent interest in the Bordeaux Hospital Property is not comparable to the examples of present entitlements cited in *Lujan*. Indeed, the Second Contract provides that Vision would not obtain ownership of the Bordeaux Property until after the closing. (Doc. No. 45-3 at ¶ 3.02) ("At the closing of each Sale Tract, Metro shall execute, acknowledge and deliver to purchaser a Quitclaim Deed conveying to Vision title in fee simple to that particular Sale Tract.").

Accordingly, the Court concludes that Plaintiffs claim, which is remediable as a breach of contract action, does not state a constitutional claim for violation of procedural due process. Defendant's motion for judgment on the pleadings with regard to Plaintiffs' procedural due process claim will, therefore, be GRANTED.

### C. Substantive Due Process

"The doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed has come to be known as substantive due process." *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (quoting *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003)). "It protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that 'shock the conscience.'" *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (citing *Bell v. Ohio State Univ.*, 351 F.3d

9

240, 249-50 (6th Cir. 2003)).  Some cases have characterized substantive due process as the right to be free from "arbitrary and capricious" government action.  The Sixth Circuit has made clear that the "arbitrary and capricious" standard is merely another formulation of the "shocks the conscience" standard and is no less stringent. *See Bowers v. City of Flint*, 325 F.3d 758, 764 (6th Cir. 2003).   To state a substantive due process claim, Plaintiffs must establish that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious or conscience shocking action. *See Braun v. Ann Arbor Charter Twp*., 519 F.3d 564, 573 (6th Cir. 2008) (referring to the arbitrary and capricious standard).

As stated in the Memorandum considering Plaintiffs' substantive due process claims against MDHA, the Complaint makes no effort to tie the alleged facts to the substantive due process claim. (*See* Compl., Doc. No. 45, ¶¶ 137-143) (alleging "Defendants' action in the current matter as set forth above have been arbitrary and tainted with improper motive which have resulted in a deprivation of Plaintiff's liberty and property rights.").  As before, Plaintiffs' brief on this issue provides no additional insight. (*See* Doc. No. 119 at 19-21 (arguing "Plaintiffs' substantive due process claims survive for the same reasons as previously presented addressing the procedural due process claims and the relevant property interests at play")).  In fact, the Plaintiffs' brief on this issue is almost entirely identical to the previously filed brief addressing the claims against MDHA, only adding the conclusory assertion that "the actions by Metro Council in proposing and passing an emergency bill in a manner that can only be characterized as clandestine, cunning and deceitful, in no way can be classified as legislative in nature, but rather was non-legislative and was arbitrary, irrational, and tainted by improper motive." (Doc. No. 119 at 21).

10

Although Plaintiffs do not specify which actions are alleged to constitute a substantive due process violation by Metro, the Court has previously held that Plaintiffs do not have a constitutionally protected property or liberty interest in their application for a zoning change, their TIF application, or their ability to earn a living through the development of the property under contract. Accordingly, to the extent Plaintiffs' substantive due process claim rests on these theories of liability, the claim fails. *See Wayne Watson Enter., LLC v. City of Cambridge*, 751 F. App'x 760, 763 (6th Cir. 2018) ("Both procedural and substantive due process claims require [plaintiff] to show that he has a property interest that was deprived.").

Insofar as Plaintiffs' substantive due process claim arises out of Metro's termination of the contracts, the claim meets the same end because contractual rights do not fall within the category of interests protected by substantive due process. "Substantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental." *EJS Prop., LLC. v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012) (*quoting Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990)). The Sixth Circuit has distinguished between "constitutionally protected interests" and "garden variety interests." *Id.* Contract interests are accorded "garden variety" status and "while assuredly protected by procedural due process, are not protected by substantive due process." *Id*; *see also, Bowers v. City of Flint*, 325 F.3d 758, 764 (6th Cir. 2003) (holding that state-created contractual rights are "simply not a proper subject of federal protection under the doctrine of substantive due process"). The Sixth Circuit has specifically applied this rule to contracts such as those at issue here, holding that a real estate purchase agreement is a state-created contractual right that is not "a proper subject of federal protection under the doctrine of substantive due process." *Taylor Acquisitions*, 313 F. App'x at 834 (quoting *Bowers v. City of Flint*, 325 F.3d 758, 764 (6th Cir. 2008)).

Furthermore, although Plaintiffs conclusively state Defendant's actions "have been arbitrary and tainted with improper motive" and are "so egregious as to shock the conscience of a viewing party," they have not pleaded *facts* to support these assertions. The standard of what constitutes arbitrary and capricious or shocks the conscience so as to state a claim for violation of substantive due process is high. For example, the Sixth Circuit has held that even solicitation of a bribe by a public official "unfortunately" does not "shock the conscience" so as to raise a substantive due process claim. *EJS Prop*., 698 F.3d at 862. The court noted that "although we can condemn [the public official] for his misconduct, we simply cannot say that his behavior is so shocking as to shake the foundations of this country." *Id*.

The conduct alleged by Plaintiffs – that Defendants intentionally breached a real estate purchase agreement – is not shocking or arbitrary and capricious. To the contrary, the Complaint alleges Metro provided the following reason for terminating the contract: Autumn Hills failed to close on the facility by August 1, 2016, and could not do so, and that there were concerns about patient care. (Doc. No. 45 at ¶¶ 52, 59). Plaintiffs allege the stated reason was a pretext and that Metro intentionally terminated the contract so that MDHA could develop and control the property and thereby avoid forfeiting $10 million in federal grant funds. (Doc. No. 45 at ¶¶ 82, 83). Defendant's termination of the contracts, even if intentional and preplanned or clandestine and deceitful, does not "shock the conscience" in a manner that raises a substantive due process claim.

For the reasons stated above, Defendant's motion for judgment on the pleadings with regard to Plaintiffs' substantive due process claim will be GRANTED.

### D. Equal Protection

Plaintiffs' final constitutional claim is under the Equal Protection clause. The Equal Protection Clause of the Constitution provides that "[n]o State shall … deny to any person within

12

its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, S1. The Equal Protection Clause prohibits discrimination by the government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). When state action is alleged to target a suspect class, "proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found*., 538 U.S. 188, 194 (2003).

To allege a plausible claim Plaintiffs must raise an inference of discriminatory purpose. To do so, they must demonstrate that the application of a facially neutral law or policy had a discriminatory impact, and that sufficient evidence exists to suggest a discriminatory motive. *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265-66 (1977). Plaintiffs must demonstrate that a decisionmaker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon a particular racial group." *Pers. Adm'r v. Feeny*, 442 U.S. 256, 279 (1979).

Plaintiffs allege they were subject to unequal treatment in the consideration of their TIF application because of discrimination based on race.[3] As evidence of racial bias, Plaintiffs allege Metro has never approved a TIF project in Bordeaux (a historic African-American community) and there is "not one building standing in Nashville owned by an African-American that has been approved for TIF financing." (Doc. No. 45 at ¶¶ 93, 94, 97, 149). Plaintiffs, however, concede

---

[3] The Complaint also alleges unequal treatment with regard to enforcement of health and safety violations at heath case facilities and compensation to non-minority corporations. In response to the motion for judgment on the pleadings, Plaintiffs set forth no arguments with regard to these allegations. Accordingly, Plaintiffs have failed to oppose Defendant's motion to for judgment on these claims and any argument with regard to the viability of the equal protection claim based on these allegations is waived. See *Humphrey v. U.S. Att'y Gen*., 279 F. Appx. 328, 331 (6th Cir. 2008).

13

that during the past five years no other African-American businesses have applied for TIF. (*Id*. at ¶ 67). Plaintiffs argue that MDHA has instead awarded TIF funds to development projects in non-historically black areas of Nashville – Westin Hotel, Bellevue Mall, "projects in the Gulch," Rolling Hills, and a project by a Florida firm. (*Id*. at ¶ 91, 93). Plaintiffs also allege TIF funds were awarded to Old Hickory Towers, "an existing and operating senior high rise," while Plaintiffs project was deemed ineligible. (*Id*. at ¶ 96).

The Court previously dismissed the equal protection claim against MDHA because Plaintiffs did not plead facts to show that the projects awarded TIF finding were similarly situated to the Vision project and did not provide evidence to raise an inference that racial discrimination was a motivating factor in the denial of Plaintiffs' TIF application. (Doc. No. 95 at 24). Plaintiffs' equal protection claim against Metro fails for the same reasons.

Plaintiffs must plead sufficient facts from which it can be inferred that defendants treated similarly situated individuals differently. *Braun*, 519 F.3d at 574-75. Plaintiffs have listed several developments that received TIF funds and are not located in historic African-American communities. Plaintiffs refer generally to some developments by their location without giving any facts regarding the funded projects. It is evident from the project names, however, that the Westin Hotel and the Bellevue Mall are not similar to the development for which Plaintiffs sought funding. In fact, the only apparent similarity between the listed projects and the Vision project is that they all involve real estate development, which standing alone is insufficient to establish that the projects are similarly situated. Although exact correlation is not required, the projects must evidence some relevant similarity. *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000). The Old Hickory High Rise, which Plaintiffs allege to be similarly situated because it also houses seniors, is the lone example with some modicum of similarity to the Vision project. However, this sole

14

congruence is not enough to show they are similarly situated in all material respects. *See Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992) (dismissing equal protection claim when plaintiff alleged only that other condominium units received approval but presenting no evidence that these other developments were similarly situated).

Even assuming Plaintiffs showed that the Old Hickory High Rise is an appropriate comparator, the facts alleged are insufficient to raise an inference of discriminatory intent. The only evidence of discriminatory intent cited by Plaintiffs is that TIF funds have not financed developments in the historically African-American neighborhoods of North Nashville/Bordeaux and, in the past ten years, TIF funds have not been awarded to any African-American owned businesses. At most, the facts alleged show that the failure to award TIF funds to African-American businesses or projects in North Nashville/Bordeaux were made in spite of Plaintiffs' race, not because of it. In fact, the allegations of the Complaint state that Vision is the only African-American owned business to apply for TIF funds in the past five years.

Plaintiffs argue it is irrelevant that no other African-American businesses have recently applied for TIF funds because there are no buildings in Nashville owned by an African-American that have been approved for TIF funds. It is unclear whether Plaintiffs intend to assert that no African-American owned business has ever received TIF funds or if the statement was intentionally crafted to be ambiguous and leave open the possibility that African-American owned business have been approved for TIF funds, but the buildings themselves are not currently so owned. In either case, Plaintiffs' assertion that a single African-American owned business was denied funding is not sufficient evidence to support an inference of racial discrimination.

Moreover, given Plaintiffs' contention that "Metro's plan all along" was to build low to moderate income multi-family housing on the property under contract to Vision so that it would

15

not have to return a $10 million grant to the federal government, an inference that race, rather a desire to keep $10 million, was the motivating factor is unwarranted. Taken as a whole, the alleged facts do not support an inference of discriminatory intent.

In sum, Plaintiffs have not pleaded facts sufficient to show they were treated differently from similarly situated persons or to support an inference of discriminatory intent to sustain a claim under the Equal Protection Clause. Accordingly, Defendant's motion for judgment on the pleadings will be GRANTED on this claim.

### E. The Remaining State Claims

Because the Court has dismissed all of the federal claims, the Court declines to exercise supplemental jurisdiction over the pendant state law claims. Accordingly, the state law claims against Metro and MDHA are dismissed without prejudice. *Landefield v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmtead Ohio*, 927 F.2d 909, 917 (6th Cir. 1991).

## IV. CONCLUSION

For the foregoing reasons, Metro's Motion for Judgment on the Pleadings (Doc. No. 99) is **GRANTED**. Plaintiffs' constitutional claims for violations of procedural due process, substantive due process, and equal protection (Counts One, Two, and Three) are **DISMISSED WITH PREJUDICE**. Plaintiffs pendant state law claims (Counts Four through Nine) against Metro and MDHA are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs' Motion to Conduct Limited Discovery (Doc. No. 120) is **DENIED**.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

16